ORIGINAL

FILED IN CLERK'S OFFICE
U.S.D.C. - Atlanta

APR 04 2013

JAMES N. HATTEN, Clerk
By: _____ Deputy Clerk

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

SECURITIES AND EXCHANGE
COMMISSION,                      :
                                 :
                                 :
            Plaintiff            :
                                 :
vs.                              :
                                 :       Civil Action File No.
                                 :
INTER REEF LTD. dba              :       **1:13-CV-1104**
PROFITABLE SUNRISE,              :
                                 :       **JURY TRIAL DEMANDED**
            Defendant,           :
                                 :
                                 :
MELLAND COMPANY S.R.O.,          :
COLOR SHOCK S.R.O.,              :
SOLUTIONS COMPANY S.R.O. and     :
FORTUNA-K S.R.O.                 :
                                 :
            Relief Defendants.   :
                                 :

## COMPLAINT FOR INJUNCTIVE RELIEF

Plaintiff, Securities and Exchange Commission (the "Commission"), files its

complaint and alleges that:

## OVERVIEW

1.    Inter Reef Ltd. ("Inter Reef"), a United Kingdom-registered company, doing business as Profitable Sunrise[1] has been conducting an internet-based offering fraud and pyramid scheme since at least December 2012, targeting citizens of the United States.

2.    Through its website, social media, and numerous promoters in the United States, Profitable Sunrise has been promising investors returns of between 1.6 and 2.7 percent per day, representing that it generates profits by making loans to businesses at higher rates. Those representations are false. The scheme also offers incentives for those who solicit additional investors.

3.    On information and belief, tens of thousands of investors have invested at least tens of millions of dollars in Profitable Sunrise.

4.    The investments that Profitable Sunrise offered and sold were "securities" under federal securities law. The securities transactions were neither registered nor exempt from registration.

5.    Profitable Sunrise operates for the benefit of unknown individuals and/or organizations doing business through companies formed in the Czech Republic and

---

[1] This complaint will refer to Defendant Inter Reef by its dba, Profitable Sunrise. All references to Inter Reef include Profitable Sunrise and all references to Profitable Sunrise include Inter Reef.

using bank accounts in the Czech Republic, Hungary, Latvia, and China, among other places.

6.     Relief Defendants Melland Company S.R.O. ("Melland"), Solutions Company S.R.O. ("Solutions"), Color Shock S.R.O. ("Color Shock"), and Fortuna-K S.R.O. ("Fortuna"), are Czech Republic companies.  Defendant has directed investors to send their money to these companies.

## VIOLATIONS

7.     Defendant has engaged and, unless restrained and enjoined by this Court, will continue to engage in acts and practices that constitute and will constitute violations of Sections 5(a), 5(c), and 17(a) of the Securities Act of 1933 ("Securities Act") [15 U.S.C. §§ 77e(a) and 77e(c) and 77q(a)] and Section 10(b) of the Securities Exchange Act of 1934 ("Exchange Act") [15 U.S.C. § 78j(b)] and Rule 10b-5 thereunder [17 C.F.R. § 240.10b-5].

8.     Relief Defendants have been unjustly enriched by Defendant's misconduct and have no legal or equitable claim to the funds they have received.

## JURISDICTION AND VENUE

9.     The Commission brings this action pursuant to Sections 20 and 22 of the Securities Act [15 U.S.C. §§ 77t and 77v] and Sections 21(d) and 21(e) of the

3

Exchange Act [15 U.S.C. §§78u(d) and 78u(e)] to enjoin Defendant from engaging in the transactions, acts, practices, and courses of business alleged in this complaint, and transactions, acts, practices, and courses of business of similar purport and object and seeking other relief.

10.     This Court has jurisdiction over this action pursuant to Sections 20 and 22 of the Securities Act [15 U.S.C. §§ 77t and 77v] and Sections 21(d), 21(e), and 27 of the Exchange Act [15 U.S.C. §§ 78u(d), 78u(e), and 78aa].

11.     Defendant, directly and indirectly, made use of the mails, the means and instruments of interstate commerce, and the means and instrumentalities of transportation and communication in interstate commerce in connection with the transactions, acts, practices, and courses of business alleged in this complaint.

12.     The Defendant does not maintain an office in the United States, but its internet-based scheme targets U.S. investors.  Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(3).

13.     Defendant, unless restrained and enjoined by this Court, will continue to engage in the transactions, acts, practices, and courses of business alleged in this complaint, and in transactions, acts, practices, and courses of business of similar purport and object.

4

## THE DEFENDANT

14.    **Inter Reef** is a United Kingdom company, which lists an office at 590A Kingsbury Road, Birmingham, United Kingdom.  Its registered agent is a resident of the Seychelles, a country consisting of more than 100 islands located in the western Indian Ocean.  The registered agent is not licensed to sell securities.  Inter Reef purports to make loans with funds raised from investors.  It does business under the name Profitable Sunrise.

## THE RELIEF DEFENDANTS

15.    **Melland** is a Czech Republic limited liability company which lists an address in Prague.  According to Czech records, Melland was founded on October 27, 2010 and is owned by a resident of Russia.  During certain times, Profitable Sunrise directed investors to wire funds to Melland's bank account in Prague.

16.    **Color Shock** is a Czech Republic limited liability company which lists an address in Prague.  According to Czech records, Color Shock was founded on June 14, 2011 and is owned by a resident of the Czech Republic.  During certain times, Profitable Sunrise directed investors to wire funds to Color Shock's bank account in Budapest, Hungary.

5

17.     **Solutions** is a Czech Republic limited liability company which lists an address in Prague.  According to Czech records, Solutions was founded on June 15, 2011 and is owned by a resident of Mexico.  During certain times, Profitable Sunrise directed investors to wire funds to Solution's bank account in Prague.

18.     **Fortuna** is a Czech Republic limited liability company which lists an address in Prague.  According to Czech records, Fortuna was founded on December 10, 1999 and is owned by two residents of the Czech Republic.  During certain times, Profitable Sunrise directed investors to wire funds to Fortuna's bank account in Prague.

## THE SCHEME

19.     Profitable Sunrise, via its website, offered investors the opportunity to "Get Richer with Every Sunrise" by investing in a series of programs with low minimum investments that promised compounded returns between 1.6 percent and 2.7 percent per business day.

20.     Although the Profitable Sunrise website stated that the company has been operating for over six years, the United Kingdom Companies House reports that Inter Reef has been in existence for only 19 months.

6

21.     Though its website, Profitable Sunrise solicits investors in the United States, especially religious investors.  The Profitable Sunrise website contains several Bible quotes, and the company claims to donate a large portion of its earnings to charity.

22.     Until recently, Profitable Sunrise solicited investments at the web address www.profitablesunrise.com.  Since approximately March 20, 2013—shortly after several U.S. states issued investor alerts regarding Profitable Sunrise and commenced coordinated enforcement actions—the website has either moved or been shut down.

23.     On information and belief, Profitable Sunrise has collected at least tens of millions of dollars from thousands of investors in the United States.   A bank account in the name of one of the Relief Defendants has a balance of over $11 million.

**The Purported Profit-Generating Business**

24.     Profitable Sunrise claims to generate a profit by making loans to businesses at high interest rates.

25.     Profitable Sunrise represents that each loan is insured against default and that the risk of investment in Profitable Sunrise, therefore, is very low.

7

26.    Profitable Sunrise represents that it is operated by an individual named
Roman Novak, that Roman's brother Radoslav Novak is in charge of the
company's legal affairs and marketing, and that Ruth Ellington serves as the
company's accountant.

**Profitable Sunrise Investments**

27.    Profitable Sunrise claims to offer five investment plans: (1) the Starter Plan,
(2) the Regular Plan, (3) the Advanced Plan, (4) the Private Plan, and (5) the Long
Haul Plan.

28.    For the Starter Plan, the Regular Plan, and the Advanced Plan, the minimum
investments are $10, $500, and $2,500, respectively, while the interest rates to be
paid to investors per business day are 1.6 percent, 1.8 percent, and 2 percent,
respectively.  Each of these plans has an investment term of 180 business days,
with balances supposedly compounded daily.

29.    The website notes that the Private Plan is available to groups only and that
its terms are to be discussed individually.

30.    The website states that the duration of the Long Haul Plan is 240 days.  The
minimum investment is $500, interest is paid at a rate of 2.7 percent per business
day, and "compounding is set at 100 percent."

8

31.     Profitable Sunrise has a referral program that operates as a pyramid scheme. The program allows investors to earn a percentage of investments made by those they refer to the company, plus a percentage of the supposed earnings on those investments.  To encourage referrals, Profitable Sunrise offered to send each participant a "personal referral link" to be posted on websites.

32.     The referral fee, five percent, has had the desired effect: dozens of American solicitors have created YouTube videos, Facebook pages, and innumerable tweets extolling the supposed virtues of Profitable Sunrise.

33.     In one of the numerous YouTube videos, viewed more than 33,000 times, a narrator explains how Profitable Sunrise promises to pay his group, referred to as "SGP," 2.15 percent daily on amounts deposited for 170 business days.  That video includes the following chart to illustrate returns.

| Deposit | SGP 2.15% for 170 Business Days |
|---------|--------------------------------|
| $200 | $7,439.69 |
| $500 | $18,599.22 |
| $1,000 | $37,198.44 |
| $2,500 | $92,996.10 |
| $5,000.00 | $185,992.20 |
| $7,500.00 | $278,988.30 |
| $10,000.00 | $371,984.40 |
| $20,000.00 | $743,968.80 |

34. The video claims, as noted above, that a $5,000 investment will return almost $186,000 in 170 days, representing an implausibly high return rate of 3,720 percent.

35. In another video, as part of a lengthy discussion of why Profitable Sunrise "is not a Ponzi or pyramid scheme," the speaker claims that Profitable Sunrise operates as "a ministry." In another, a speaker encourages viewers to invest with Profitable Sunrise to fund charitable programs.

**Misrepresentations and Omissions**

36. Profitable Sunrise offered and sold the above-referenced securities by making material misrepresentations and omitting to disclose material facts.

37. Profitable Sunrise, through its website, misrepresented to prospective investors that the company had been in operation for six years when, in fact, the company has only been in existence for only 19 months.

38. Profitable Sunrise, through its website, misrepresented that investors could earn high rates of return.

10

39.    Profitable Sunrise, through its website, misrepresented that "investments are insured by a leading investment bank." Upon information and belief, no investment bank insures the investments.

40.    Profitable Sunrise, through its website, misrepresented to prospective investors that the funds invested would be used to make loans.

## Investor Funds Are Directed To Eastern Europe

41.    Contrary to how Profitable Sunrise represents itself, it has no substantive operations in the UK.

42.    On information and belief, Profitable Sunrise has no substantive operations of any kind, aside from operating the scheme described herein.

43.    In an apparent effort to limit the ability to recover funds, Defendant has used a variety of corporations as the recipient of investor funds.

44.    At least some investors have been instructed to wire funds for investment in Profitable Sunrise to an account at a Czech Republic bank held in the name of Relief Defendant Melland.

11

45.     According to Czech corporate records, Melland was formed as a Czech limited liability company in October 2010 and is owned by a resident of St. Petersburg, Russia.

46.     From at least December 10, 2012 to March 18, 2013, U.S. investors in Profitable Sunrise wired funds to a Melland account (account number XXXXXXX6001) at Raiffeisenbank, A.S. in Prague.

47.     On information and belief, the persons chiefly responsible for the scam control Melland, and the proceeds of the fraud flow out of Melland's account(s), directly or indirectly, into the hands of those individual(s).

48.     Neither Melland nor the people or organizations that control it provided value in exchange for the funds.  Rather, they held the funds as a conduit for the fraudulent scheme.

49.     After a period of time, Profitable Sunrise directed investors to send their investments, via wire transfer, to a different Czech company, Defendant Solutions.

50.     According to Czech corporate filings, Solutions was formed as a Czech limited liability company in June 2011 and is owned by a resident of Salina Cruz, Mexico.

51.     From at least February 4, 2012 to February 21, 2013, U.S. investors wired money into a Solutions bank account (account number XXXXXXX0500) at Ceskolovenska Obchodni Bank, A.S. in Prague.

52.     On information and belief, the persons chiefly responsible for the scam control Solutions, and the proceeds of the fraud flow out of Solutions' account(s), directly or indirectly, into the hands of those individual(s).

53.     Neither Solutions nor the people or organizations that control it provided value in exchange for the funds. Rather, they held the funds as a conduit for the fraudulent scheme.

54.     After a period of time, Profitable Sunrise directed investors to send their investments to yet another Czech company, Defendant Color Shock.

55.     Color Shock was formed as a Czech limited liability company in June 2011. Its address is in Prague, just around the corner from the address of Defendant Solutions.

56.     The owner of Color Shock, according to those filings, is a resident of the Czech Republic.

57.    From at least February 6, 2013 to March 8, 2013, U.S. investors wired

money into a Color Shock bank account (account number XXXXXXX0015) at

MKB Bank ZRT in Budapest, Hungary.

58.    On information and belief, the persons chiefly responsible for the scam

control Color Shock, and the proceeds of the fraud flow out of Color Shock's

account(s), directly or indirectly, into the hands of those individual(s).

59.    Neither Color Shock nor the people or organizations that control it provided

value in exchange for the funds.  Rather, they held the funds as a conduit for the

fraudulent scheme.

60.    The approximate balance of the account as of this filing is €8.8 million

(approximately $11.3 million).

61.    After a period of time, Profitable Sunrise directed investors to send their

investments to yet another Czech Republic company, Relief Defendant Fortuna.

62.    Fortuna was formed as a Czech limited liability company in December 1999.

Its address is in Prague.

14

63.    According to Czech corporate records, the ownership of Fortuna has changed numerous times, with the last change occurring in March 2009.  Those records indicate that the owners of Fortuna are residents of the Czech Republic.

64.    From at least February 25, 2013 to March 6, 2013, U.S. investors wired money into a Fortuna bank account (account number XXXXXXX0297) at Komercni Banka A.S. in Prague.

65.    On information and belief, the persons chiefly responsible for the scam control Fortuna, and the proceeds of the fraud flow out of Fortuna's account(s), directly or indirectly, into the hands of those individual(s).

66.    Neither Fortuna nor the people or organizations that control it provided value in exchange for the funds.  Rather, they held the funds as a conduit for the fraudulent scheme.

## COUNT ONE – UNREGISTERED OFFERING OF SECURITIES

### Violation of Sections 5(a) and 5(c) of the Securities Act [15 U.S.C. §§ 77o(a) and 77o(c)]

### (Inter Reef)

67.    Paragraphs 1 through 66 are hereby re-alleged and incorporated herein by reference.

15

68.    No registration statement has been filed or is in effect with the Commission pursuant to the Securities Act and no exemption from registration applies.

69.    Defendant, singly and in concert with others, has:

      a.    made use of the means or instruments of transportation or communication in interstate commerce or of the mails to sell securities, through the use or medium of a prospectus or otherwise;

      b.    carried securities or caused such securities to be carried through the mails or in interstate commerce, by any means or instruments of transportation, for the purpose of sale or for delivery after sale; and

      c.    made use of the means or instruments of transportation or communication in interstate commerce or of the mails to offer to sell or offer to buy securities, through the use or medium of any prospectus or otherwise,

without a registration statement having been filed with the Commission as to such securities.

70.    By reason of the foregoing, Defendant, directly and indirectly, has violated Sections 5(a) and 5(c) of the Securities Act [15 U.S.C. §§ 77e(a) and 77e(c)].

16

## COUNT TWO – FRAUD

## Violations of Section 17(a)(1) of the Securities Act [15 U.S.C. § 77q(a)(1)]
### (Inter Reef)

71.     Paragraphs 1 through 66 are hereby re-alleged and are incorporated herein
by reference.

72.     Defendant, in the offer and sale of the securities described herein, by use of
means or instruments of transportation or communication in interstate commerce
or by use of the mails, directly and indirectly, employed devices, schemes, and
artifices to defraud purchasers of such securities, all as more particularly described
above.

73.     Defendant knowingly, intentionally, and/or recklessly engaged in the
aforementioned devices, schemes, and artifices to defraud.

74.     While engaging in the course of conduct described above, Defendant acted
with scienter, that is, with an intent to deceive, manipulate, or defraud, or with a
severely reckless disregard for the truth.

75.     By reason of the foregoing, Defendant, directly and indirectly, has violated
and, unless enjoined, will continue to violate Section 17(a)(1) of the Securities Act
[15 U.S.C. § 77q(a)(1)].

17

## COUNT THREE – FRAUD

### Violations of Sections 17(a)(2) and 17(a)(3)
### of the Securities Act [15 U.S.C. §§ 77q(a)(2) and 77q(a)(3)]

### (Inter Reef)

76.     Paragraphs 1 through 66 are hereby re-alleged and are incorporated herein by reference.

77.     Defendant, in the offer and sale of the securities described herein, by use of means or instruments of transportation or communication in interstate commerce or by use of the mails, directly and indirectly:

>    a.     obtained money or property by means of untrue statements of material fact and omissions to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and

>    b.     engaged in transactions, practices, or courses of business which would and did operate as a fraud and deceit upon the purchasers of such securities,

all as more particularly described above.

18

78.     By reason of the foregoing, Defendant, directly and indirectly, has violated
and, unless enjoined, will continue to violate Sections 17(a)(2) and 17(a)(3) of the
Securities Act [15 U.S.C. §§ 77q(a)(2) and 77q(a)(3)].

### COUNT FOUR—FRAUD

**Violations of Section 10(b) of the Exchange Act
[15 U.S.C. § 78j(b)] and Rules 10b-5(a), (b), and (c)
 thereunder [17 C.F.R. § 240.10b-5 (a), (b), & (c)]**

**(Inter Reef)**

79.     Paragraphs 1 through 66 are hereby re-alleged and are incorporated herein
by reference.

80.     Defendant, in connection with the purchase or sale of securities described
herein, by the use of the means or instrumentalities of interstate commerce or by
use of the mails, directly and indirectly:

      a.     employed devices, schemes, or artifices to defraud;

      b.     made untrue statements of material fact and omitted to state
material facts necessary in order to make the statements made, in the
light of the circumstances under which they were made, not
misleading; and

c. engaged in acts, practices, or courses of business which would and did operate as a fraud or deceit upon the purchasers of such securities,

all as more particularly described above.

81. Defendant knowingly, intentionally, and/or recklessly engaged in the aforementioned devices, schemes and artifices to defraud, made untrue statements of material facts and omitted to state material facts, and engaged in fraudulent acts, practices, and courses of business. In engaging in such conduct, Defendant acted with scienter, that is, with an intent to deceive, manipulate or defraud, or with a severely reckless disregard for the truth.

82. By reason of the foregoing, Defendant, directly and indirectly, has violated and, unless enjoined, will continue to violate Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)] and Rules 10b-5(a), (b), and (c) thereunder [17 C.F.R. § 240.10b-5(a), (b), & (c)].

## COUNT FIVE-UNJUST ENRICHMENT

### (Melland, Solutions, Color Shock, Fortuna)

83. Paragraphs 1 through 66 are hereby re-alleged and are incorporated herein by reference.

84.     The Relief Defendants have received, are receiving, and currently hold the
proceeds of the violations outlined above.

85.     The Relief Defendants have been unjustly enriched by the receipt of investor
funds.

86.     The Relief Defendants have no legitimate claim to the investor funds they
have received and should be required to disgorge them, plus prejudgment interest.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Commission respectfully prays for:

### I.

Findings of fact and conclusions of law pursuant to Rule 52 of the Federal
Rules of Civil Procedure, finding that Defendant committed the violations alleged
herein.

### II.

A temporary restraining order, preliminary and permanent injunctions
enjoining Defendant, its officers, agents, servants, employees, and attorneys from
violating, directly or indirectly, Sections 5(a), 5(c), and 17(a) of the Securities Act
[15 U.S.C. §§ 77e(a), 77e(c), 77q(a)], Section 10(b) of the Exchange Act [15 U.S.C.
§ 78j(b)] and Rules 10b-5(a), (b), and (c) thereunder [17 C.F.R. § 240.10b-5(a),
(b), & (c)].

21

## III.

An order freezing the assets of Defendant and Relief Defendants including, but not limited to, the following bank accounts:

Account number XXXXXXX6001 in the name of Relief Defendant Melland at Raiffeisenbank, A.S. in Prague, Czech Republic;

Account number XXXXXXX0500 in the name of Relief Defendant Solutions at Ceskolovenska Obchodni Bank, A.S. in Prague, Czech Republic;

Account number XXXXXXX0015 in the name of Relief Defendant Color Shock at MKB Bank ZRT in Budapest, Hungary; and

Account XXXXXXX0297 in the name of Relief Defendant Fortuna at Komercni Banka A.S. in Prague, Czech Republic.

## IV.

An order requiring an accounting by Defendant of the use of proceeds of the fraudulent conduct described in this Complaint and disgorgement by Defendant and Relief Defendants of all ill-gotten gains or unjust enrichment with prejudgment interest, to affect the remedial purposes of the federal securities laws.

## V.

An order pursuant to Section 21(d)(3) of the Exchange Act [15 U.S.C.

§78u(d)(3)] imposing civil penalties against Defendant.

## VI.

A trial by jury of all facts so triable.

## VII.

Such other and further relief as this Court may deem just, equitable, and

appropriate in connection with the enforcement of the federal securities laws and for

the protection of investors.

DATED: April 4 , 2013.

Respectfully submitted,

Pat Huddleston II
Senior Trial Counsel
Georgia Bar No. 373984
huddlestonp@sec.gov

Michael E. Mashburn
Senior Investigations Counsel
Georgia Bar No. 475415
mashburnm@sec.gov

23

Attorneys for Plaintiff
Securities and Exchange Commission
950 East Paces Ferry Road, N.E., Suite 900
Atlanta, GA 30326
Tel:(404) 842-7600